### A98A1456. SAVAGE v. THE STATE.
(508 SE2d 418)

McMURRAY, Presiding Judge.

Defendant and a co-indictee were charged with a violation of the Georgia Controlled Substances Act, for possession of marijuana with intent to distribute. The following facts were stipulated, after the denial of defendant's motion to suppress: "[T]wo bags of green leafy material were found in a brown . . . bag [in a vehicle driven by defendant], that material was weighed and tested by Kathy Singleton at the Gwinnett County police department, that she is qualified to perform such tests and that she both weighed and tested it, that it tested positive for marijuana, that there were two bags involved, one bag weighing 4.80 ounces and had a number five written on the outside of the bag. The other bag weighed 3.96 ounces and had a number four written on the outside of the bag. . . . [T]here were no other illegal items found in the car." After a bench trial, defendant was adjudicated guilty and sentenced to five years, probated upon service of "90-120 days Probation Boot Camp. . . ." In this direct appeal, defendant's sole enumeration of error contends the trial court erred in denying his motion to suppress, arguing there was no consent to search and no reasonable suspicion to detain defendant pending the arrival of a drug-trained canine. *Held*:

1. "In denying the motion to suppress, the trial court implicitly found that defendant['s passenger] had consented to a search of [the] vehicle. When reviewing a ruling on a motion to suppress, the appellate court will accept the trial court's findings unless they are clearly erroneous; and this deference to the trial court's findings applies to implicit as well as explicit findings. See *Garcia v. State*, 207 Ga. App. 653 (1) (a) (428 SE2d 666) (1993)." *Brantley v. State*, 226 Ga. App. 872, 873 (2) (a) (487 SE2d 412). The testimony in the case sub judice was in conflict as to whether any consent to search the vehicle was ever given. Consequently, the determination of the trial court will be

affirmed if it is supported by the evidence of record. *State v. Davis*, 261 Ga. 225, 226 (404 SE2d 100).

2. On August 5, 1996, around 7:50 p.m., Sergeant Robert Eugene Rapien of the Gwinnett County Sheriff's Department "observed a black Dodge Neon traveling northbound on I-85, which appeared to be following too close to a tractor trailer. . . . [Sergeant Rapien] initiated [his] emergency equipment, and the vehicle pulled to the shoulder. . . . [Defendant was asked to stand at the rear of the car, where he] produced a South Carolina driver's license," and informed Sergeant Rapien that the vehicle was not his. Defendant "pointed towards the person in the front passenger seat and said that it's his girlfriend's." Sergeant Rapien asked the passenger, Mr. Brandon, "to see the insurance card and the registration, and he [Mr. Brandon] began to look in the . . . armrest console of the vehicle. [After] about 30 seconds had expired and [Mr. Brandon] didn't produce one, . . . he [Mr. Brandon] says he can't find one. . . . [Sergeant Rapien] asked him if he would look in the glove box because it was . . . a necessity [to see] the proof of insurance on the vehicle or [defendant] could be cited. . . . [Mr. Brandon] opened up the glove box, and he grabbed a brown plastic shopping bag that was right on top, and he made an abrupt motion and put it down on the floorboard, and then grabbed a whole stack of papers and stuck them on top of the bag in a very quick motion. Then [Mr. Brandon] slowed down and methodically started going through . . . the rest of the papers in the glove box looking at them, and . . . finally produced the insurance."

During this inquiry, defendant "kept wanting to come by and interrupt [the] conversation or come up from behind [Sergeant Rapien], so several times [the officer] told [defendant] to stay . . . at the back of the car. . . . At that point in time, both [defendant and Mr. Brandon were] acting nervously, and [Sergeant Rapien] had some concerns about what was in the package that he [Mr. Brandon] put in the floorboard, . . ." so the officer called for backup. While Sergeant Rapien ran a license check, defendant told Gwinnett County Sheriff's Deputy Greg Chapel that the passenger, Mr. Brandon, "was his uncle, [but when Deputy Chapel] approached the passenger . . . [and] asked what relationship he had to the driver, [Mr. Brandon] stated . . . they were just friends."

Sergeant Rapien "finished with his stop. He told [defendant and Mr. Brandon] they were free to go. Then he asked the driver [defendant] for consent to search the vehicle. The [defendant] said that [the officer] needed to ask the passenger because the car belongs to the passenger's girlfriend. . . . [Deputy Chapel] went up to the passenger and asked him if he wouldn't mind stepping back to the rear of the car . . . and it was at this time that the rain started to come down. . . . [I]t began to rain even harder now, so Sergeant Rapien

asked both [men] if they would have a seat in the back of his patrol car. They both agreed, and they were advised they were not under arrest, and at that time, Sergeant Rapien called for a K-9 unit to come out."

The anticipated "response time was . . . thirty to forty minutes. . . . Sergeant Rapien advised both [subjects] that they were going to be allowed to get back in their car, and then Sergeant Rapien went to the vehicle and checked the driver and passenger side area for weapons. [Deputy Chapel] stood outside the patrol car at the rear passenger side door with the door open the entire time. . . . [Deputy Chapel] explained to them what the dog would do when they got there. The dog would walk around the car and try to make an indication of whether or not there were drugs possibly inside the vehicle, and we would go from there." After Deputy Chapel "told them that, the passenger decided that it would be okay for us to search the vehicle. [Deputy Chapel] advised Sergeant Rapien, and a few minutes later [Sergeant Rapien told Deputy Chapel] he had found some possibly marijuana." Deputy Chapel was unclear whether Sergeant Rapien had already begun his weapons search when advised of the passenger's consent, whether he was still outside the vehicle, or whether he had merely announced his intention to do a weapons search before allowing the subjects back into their own automobile to await the K9 unit. Sergeant Rapien started his weapons search on the driver's side. He "looked underneath the seat . . . [and] behind the seat. . . . [He] pulled back the seat a little bit to make sure there wasn't a knife or a gun stuck in there, and opened the console, at which time [he saw] the bag that [he] suspected before . . ., and as soon as [he] opened it [the console, he] got the smell of marijuana." Both subjects were then placed under arrest.

Defendant testified that, after he received a citation for following too close, he was told he was free to go, "but as [defendant] was walking back to the car [Sergeant Rapien] asked [him] — told [him] that would [defendant] mind him searching the car. . . . [Defendant] said 'No, because it's not my car.'" Sergeant Rapien "got [defendant] and Kenneth Brandon together, he took [them] to the patrol car, and said he was going to wait — he wanted [them] to sit there and wait until the dog — the K-9 come because he think narcotics was in the car [sic]." Defendant confirmed it began raining "before [he] got in the police car." Mr. Brandon again refused to sign a consent form. "As [Sergeant Rapien] was approaching the [patrol] car [defendant] was in, [Deputy Chapel] told him he couldn't search the car because he didn't have consent from [them]. . . . [Defendant never did] hear Mr. Brandon give any consent[; and] he was right beside [defendant]."

Although in conflict, the evidence authorizes a factual determination that the passenger, Mr. Brandon, ultimately gave his oral con-

sent to search, despite previous refusals to sign a consent form. "Factual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous. [Cits.]" *Johnson v. State*, 233 Ga. 58 (209 SE2d 629).

3. "The fruits of a search conducted with consent are admissible. [Cits.]" *State v. Sutton*, 258 Ga. 382 (2) (369 SE2d 249). Assuming, without deciding, that this consent was granted only after an unauthorized weapons search had already been started by Sergeant Rapien, we hold the valid general consent to search the vehicle for suspected drugs, granted before any contraband was discovered, ratified the allegedly premature or unauthorized weapons search. *Atkins v. State*, 173 Ga. App. 9, 12 (3) (325 SE2d 388). The trial court did not err in denying defendant's motion to suppress.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED OCTOBER 26, 1998.

*Henderson & Lipscomb, Lyle K. Porter*, for appellant.
*Daniel J. Porter, District Attorney, James M. Miskell, Assistant District Attorney*, for appellee.