A99A2332. BISHOP v. THE STATE.
(526 SE2d 917)

ELDRIDGE, Judge.

Kyle Richard (Rick) Bishop filed an application for discretionary review of the Cobb County Superior Court's denial of his motion to suppress audiotaped recordings of his conversations with a 13-year-old girl victim, which recordings were made by the victim's parents without a court order. Because of the failure to have court authorization for the wiretap, this Court finds that the evidence should have been suppressed and reverses the trial court's ruling.

The record in this case shows the following relevant, but disputed, facts: In 1997, Bishop was a 38-year-old man residing with his wife in a Cobb County subdivision. The 13-year-old girl lived with her parents and sisters directly across the street from the Bishops. Bishop and the victim's family were good friends and often socialized.

Until the middle of 1996, the victim was a gifted student with excellent grades. However, between July 1996 and February 1997, the victim began to fail classes and experienced a dramatic change in demeanor. On February 20, 1997, the victim presented her mother with a falsified permission slip for a nonexistent, overnight school field trip. The victim's mother contacted the school when she became suspicious about the trip. When the victim was confronted with the forged permission slip and was asked to explain, the victim stated that Bishop had asked her to go with him to "Bike Week" at Daytona

Beach, Florida, for the weekend. When the victim's parents confronted Bishop with this information, he claimed that the victim was "troubled," had been stalking him, and had tried to invite herself along on the trip.

However, at approximately 10:00 p.m. on February 28, 1997, the victim's mother became aware that the victim was talking to someone on the phone. The mother surreptitiously lifted up a phone receiver in another room and heard the victim talking to Bishop; the mother immediately recognized Bishop's voice. According to the mother, Bishop and the victim talked in sexual terms and discussed killing the victim's parents. The mother hung up the phone and then instructed the victim to get off the phone, claiming that she needed to make a work-related phone call. The mother immediately called the police.

Cobb County Police Detective Darell Streefkerk interviewed the victim and her parents the next day. According to Det. Streefkerk's investigative report, the victim denied that she and Bishop had engaged in any illicit behavior. Det. Streefkerk refused the parents' request for a wiretap of their phone line.

Within hours of the police interview, the victim's parents went to Radio Shack and purchased a tape recorder to tape all of the phone calls to and from their home. After installing the equipment, the parents recorded numerous phone conversations between Bishop and the victim. The victim's father compiled several of the conversations on a single tape and gave it to Det. Streefkerk on March 18, 1997.

Based on these tapes, Det. Streefkerk called Bishop and asked him to come in for an interview. Bishop and his wife were questioned by the detective. The Bishops claimed that the victim had an adolescent crush on Mr. Bishop and was stalking him by coming to their home, looking in their windows, and calling him at night. Det. Streefkerk instructed Bishop to avoid all contact with the victim.

The victim subsequently received extensive counseling for depression. In spring 1998, the victim told her therapist that she had engaged in sexual acts with Bishop. Det. Streefkerk again interviewed the victim, who described the molestation in detail. Bishop was arrested and indicted on child molestation, aggravated child molestation, and aggravated sexual battery.

Defense counsel filed a motion to suppress the contents of the audiotapes of the phone conversations between Bishop and the victim. A motion hearing was conducted on March 31, 1999, during which the victim and her mother testified regarding the circumstances of the phone conversations and the recording thereof. The victim specifically testified that, after receiving months of therapy, she was glad her parents made the tapes.

The trial court denied Bishop's motion to suppress.[1] This Court granted Bishop's application for appellate review, and this appeal followed. *Held*:

1. In his first assertion, Bishop claims that the trial court erred in denying his motion to suppress evidence of illegally taped phone conversations by failing to apply the child consent procedures as codified in OCGA § 16-11-66. This Court reluctantly agrees with Bishop's argument.

OCGA § 16-11-62 prohibits the interception or recording of a telephone call by *any person* who is not a party to the conversation. OCGA § 16-11-62 (1), (4). This prohibition includes interceptions by family members. *Kelley v. State*, 233 Ga. App. 244, 248-249 (2) (503 SE2d 881) (1998). "OCGA § 16-11-62 was intended to protect all persons from an invasion of privacy. *Ransom* [*v. Ransom*, 253 Ga. 656 (324 SE2d 437) (1985)]." Id. at 249 (2).

However, OCGA § 16-11-66 provides two specific exceptions which allow such interception.[2] OCGA § 16-11-66 (a) reads as follows: "Nothing in Code Section 16-11-62 shall prohibit a person from intercepting a wire, oral, or electronic communication where such person is a party to the communication or *one of the parties to the communication has given prior consent* to such interception." (Emphasis supplied.) Further, OCGA § 16-11-66 (b) provides that the telephone conversations of a child under 18 years of age may be recorded and divulged *if*, upon written application by a private citizen, law enforcement agency, or prosecutor's office, a judge of a superior court and the child consent to such taping.

> The judge shall issue the order provided by subsection (b) of the Code section only: (1) [u]pon finding probable cause that a crime has been committed; (2) [u]pon finding that the child understands that the conversation is to be recorded and that such child agrees to participate; and (3) [u]pon determining that participation is not harmful to such child.[3]

OCGA § 16-11-66 (c).

Under OCGA § 16-11-67, "[n]o evidence obtained in a manner

---

[1] Defense counsel filed a motion to set aside the trial court's denial, based upon newly discovered evidence regarding Det. Streefkerk's participation in the taping. After conducting a second hearing, the trial court reaffirmed the previous order but added another provision which is not relevant herein.

[2] OCGA § 16-11-64 provides an exception allowing law enforcement personnel to acquire a warrant to intercept or record wire or oral transmissions. No such warrant was secured in this case.

[3] "A true and correct copy of the recording provided for in subsection (b) of this Code section shall be returned to the superior court judge who issued the order and such copy of the recording shall be kept under seal until further order of the court." OCGA § 16-11-66 (c).

which violates [OCGA §§ 16-11-62 through 16-11-66.1] shall be admissible in any court of this state, except to prove violations of [such statutes]." This creates a state statutory privacy right.

(a) As an initial matter, it is undisputed that no superior court judge entered an order pursuant to OCGA § 16-11-66 (b) in this case. Accordingly, that provision cannot provide a basis for admissibility of the audiotapes.

(b) Therefore, the only way the tapes could have been admissible in this case is if they were recorded by "a party to the [conversation] or one of the parties to the communication [gave] prior consent to such interception." OCGA § 16-11-66 (a). The trial court erroneously found that such consent was given by the following methods: (i) the parents' "vicarious consent" to the recording on behalf of their daughter; (ii) the victim's implied consent to the recording; and (iii) the victim's subsequent ratification of the recording.

(i) In its order denying Bishop's motion to suppress, the trial court ruled that the tapes were admissible under a "vicarious consent exception to Title III as applied in other jurisdictions." See Omnibus Crime Control & Safe Streets Act of 1968, 18 USC § 2510 et seq. ("Title III"); see also *Pollock v. Pollock*, 154 F3d 601, 610 (6th Cir. 1998); *Campbell v. Price*, 2 FSupp.2d 1186, 1191 (E.D. Ark. 1998); *Thompson v. Dulaney*, 838 FSupp. 1535, 1544 (D. Utah 1993); *Silas v. Silas*, 680 S2d 368, 371 (Ala. App. 1996); but cf. *Williams v. Williams*, 229 Mich. App. 318 (581 NW2d 777) (1998) (rejecting the vicarious consent exception). The trial court held that the victim's parents could consent to the taping because they had "a good faith objectively reasonable basis for believing that it was necessary to consent [to such taping] on behalf of their thirteen year old daughter." In making such ruling, the trial court relied on the above-cited foreign case law interpreting Title III, instead of applying Georgia's statutory requirements under OCGA § 16-11-66. Such reliance was error.

Title III was enacted in 1968 to protect the privacy of wire and oral communications and to regulate the conditions under which interceptions would be allowed. Pub. L. 90-351, Title III, § 801, p. 253, 82 Stat. 211 (1968); U. S. Code Cong. & Admin. News, 90th Cong., pp. 2112, 2153 (1968) (Report of the Senate Committee on the Judiciary); see also U. S. Code Cong. & Admin. News, 99th Cong., p. 3555 (1986) (legislative history of the Electronic Communications Privacy Act, which amended Title III); *United States v. Giordano*, 416 U. S. 505, 514 (94 SC 1820, 40 LE2d 341) (1974). Presently, Title III prohibits the interception of wire, oral or electronic communications without (1) a court order or (2) the prior consent of a party to the conversation. 18 USC § 2511 (1), (2) (a) (ii) and (d).

Unfortunately, for situations which involve minors, as in this case, when Congress enacted Title III, it "did not intend to occupy the

entire field of electronic surveillance to the exclusion of state regulation." *People v. Conklin*, 522 P2d 1049, hn. 9 (Cal. 1974) (providing a comprehensive review of Title III's legislative history). See also U. S. Const., Art. VI, cl. 2 (Supremacy Clause); *City of Atlanta v. Watson*, 267 Ga. 185, 192 (3) (475 SE2d 896) (1996); *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (2) (458 SE2d 95) (1995) (the issue of federal preemption of state law is a question of congressional intent); *Ga. Pub. Svc. Comm. v. CSX Transp.*, 225 Ga. App. 787, 788-789 (2) (484 SE2d 799) (1997). In fact,

> [t]he legislative history of Title III reveals that Congress intended that the states be allowed to enact more restrictive laws designed to protect the right of privacy. . . . The State statute must meet the *minimum standards* reflected as a whole in [Title III. Then, the State] would be free to adopt *more restrictive* legislation, or no legislation at all, but not less restrictive legislation. In other words, Congress left room for the states to supplement the law in certain areas, provided the regulations are not more permissive.

(Citations and punctuation omitted; emphasis in original.) *People v. Conklin*, supra at 1057. See also *Roberts v. Americable Intl.*, 883 FSupp. 499, 503 (E.D. Cal. 1995); *United States v. Curreri*, 388 FSupp. 607, 613 (D. Md. 1974); *People v. Otto*, 831 P2d 1178, 1184 (Cal. 1992); *People v. Pascarella*, 92 Ill. App. 3d 413 (415 NE2d 1285) (1981). While the construction of Title III would make the evidence in this case admissible, there has been no federal preemption.

As demonstrated below, OCGA § 16-11-62 et seq. delineates greater state statutory restrictions on interceptions and, therefore, provides greater protection to individual privacy rights than Title III. See *Dobbins v. State*, 262 Ga. 161, 162-163 (2) (a) (415 SE2d 168) (1992); *Tapley v. Collins*, 41 FSupp.2d 1366, 1369 (S.D. Ga. 1999) ("Georgia's telephone privacy statutes arguably provide more privacy protections than their federal counterparts."); *Granese v. State*, 232 Ga. 193, 196 (206 SE2d 26) (1974) (holding that Georgia's interception statute supplements the federal statute). Accordingly, OCGA § 16-11-62 et seq. was not preempted by Title III and should have been applied to this case.

(ii) The issue then becomes whether OCGA § 16-11-66 allows parents to vicariously consent to interceptions of their children's telephone calls. After reviewing the specific language of the statute, its legislative history, and subsequent case law, we must conclude that it does not.

OCGA § 16-11-66 provides an exception to OCGA § 16-11-62's prohibition against interceptions of phone calls, i.e., when a party to

the conversation expressly or impliedly consents to such interception. See Legislative Review, 10 Ga. St. U. L. Rev. 109, 110 (1993). In 1992, the Supreme Court of Georgia decided *Dobbins*, supra, a case in which police officers had arranged for the recordings of incriminating phone calls between a child and her molester, and the child's father consented to such arrangement. Id. at 162. After the recordings were admitted at trial, Dobbins was convicted. However, the Supreme Court reversed his conviction, holding that the father could not vicariously consent to such recordings on behalf of his child under OCGA § 16-11-66. In addition, the requirements of OCGA § 16-11-64 had not been satisfied. See id. at fn. 2. Therefore, such recordings were inadmissible at trial under OCGA § 16-11-67. Id. at 163.

The Supreme Court's ruling in *Dobbins* spurred the Georgia Legislature to amend OCGA § 16-11-66 in 1993. Legislative Review, supra at 109.

> The Act was originally introduced with a provision allowing for guardians, custodial parents, parents or the court to consent for children under the age of fourteen. The Act was amended by the House Judiciary Committee to apply to children under the age of eighteen and to place the decision to grant permission to record in the hands of judges *alone* as long as certain guidelines are followed.

(Emphasis supplied.) Legislative Review, supra at 111 (citing an interview with the bill's sponsor, former Rep. Ken Poston). As adopted, the Act stated that one purpose was "to provide that consent to the divulging of the conversation of a child under the age of 18 years shall be given *only by court order*." (Emphasis supplied.) Ga. L. 1993, p. 565. Although, under Georgia law, such interview and article cannot constitute legislative history, it is clear from the language of the amendment that it precludes the "vicarious consent" utilized by the trial court in this case to admit the recordings of phone calls between Bishop and the victim. The trial court's finding that the tapes were admissible under this theory is error as a matter of law.

(iii) Further, the specific limiting language of OCGA § 16-11-66 (b) clearly provides that, when one party to a conversation is under the age of eighteen, the *only* person who can consent to an interception is a superior court judge, although the judge also must have the consent of the minor child. As such, under OCGA § 16-11-66, a minor child alone lacks the capacity to consent to the interception of telephone calls to which the child is a party, even if age ten or older. See OCGA § 39-1-1; cf. *Kelley v. State*, supra at 247, n. 1 (discussing the

varying ages for valid consent in Georgia).[4]

Therefore, as a matter of law, the child victim alone could never have given consent to the recording of her phone calls *either* by implication[5] or by subsequent ratification. Since OCGA § 16-11-67 precludes the admission of wiretap evidence that had been collected in violation of OCGA § 16-11-66, Bishop's motion to suppress such tape recordings should have been granted by the trial court.

(c) This Court recognizes that OCGA § 16-11-66, as drafted, creates numerous evidentiary problems in cases such as this, when a child is under significant criminal influence by another and such criminal influence poses a genuine risk which is not recognized by a child of tender years. Clearly, even if the State or the parents in this case had petitioned a superior court judge, under OCGA § 16-11-66 (b), for permission to tape the conversations between Bishop and the victim, the victim would have refused to consent and participate at that time, thereby precluding the issuance of such order. See OCGA § 16-11-66 (c) (2).

Further, while OCGA § 16-11-62 et seq. was intended to protect the privacy rights of all individuals, it is very unlikely that the Georgia Legislature intended to allow child molesters or abusers to hide evidence by asserting their *victim's* privacy rights.

However, when the statutory language is clear and unambiguous, as in this case, this Court is not authorized to look behind the Act to discover or implement what the Court believes was the true intent of the Georgia Legislature. *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81) (1970) ("[w]here the language of an Act is

---

[4] This case is distinguishable from *Legg v. State*, 207 Ga. App. 399 (428 SE2d 87) (1993), wherein this Court found that a statutory rape victim under the age of 14 had the capacity to consent to the recording of her phone conversations with the defendant in that case. *Legg* was decided in January 1993, before the legislature amended OCGA § 16-11-66 to include subsections (b) and (c), requiring court approval for recording the private conversations of a minor.

[5] This Court notes that the evidence in the record overwhelmingly demonstrates that the victim *did not* impliedly consent to the recording of her phone conversations *prior* to such recordings. See OCGA § 16-11-66 (a). Although there was evidence which showed that the victim was aware that her mother was listening in on some of the conversations, it also showed that she confronted her mother about the eavesdropping on several occasions. When the victim suspected that her parents may be listening to her calls, she complained to the defendant and actively sought methods to avoid such interception by using telephones outside of the home, as well as through the use of handwritten letters and e-mails. Although the victim never expressly asked her mother to stop the interceptions, such active avoidance precludes a finding that the victim impliedly consented to the recordings. Further, it is undisputed that the victim never gave express prior permission for the interceptions. In fact, it seems clear that the victim did not know about the *recordings* until her parents told her about them in late March, after the victim's father had given Det. Streefkerk a tape of recorded conversations. Therefore, the trial court's finding that the victim gave "implied" consent appears to be clearly erroneous. See *Savage v. State*, 234 Ga. App. 855 (1) (508 SE2d 418) (1998); *Bowen v. State*, 210 Ga. App. 348 (436 SE2d 76) (1993).

plain and unequivocal, judicial construction is not only unnecessary but is forbidden. [Cit.]"). This is particularly true when, as here, the legislature has considered — and rejected — language which would have authorized the admissibility of evidence in criminal cases. Therefore, it is solely the task of the legislature to amend OCGA § 16-11-66 to allow the admission into evidence of tape recordings such as those at issue here, i.e., tapes made by parents with a good faith, objectively reasonable basis for concern regarding the safety of their children as victims of criminal conduct of another.

2. Bishop's remaining allegations were addressed in Division 1, supra.

*Judgment reversed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED DECEMBER 15, 1999.

*J. William Morse, Marc D. Cella*, for appellant.

*Patrick H. Head, District Attorney, Bruce D. Hornbuckle, Debra H. Bernes, Maria B. Golick, Assistant District Attorneys*, for appellee.