**FIRST DIVISION
DOYLE, C. J.,
PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0751. LONDON v. THE STATE.

PHIPPS, Presiding Judge.

Bartholomew London was convicted of child molestation and two counts of aggravated child molestation involving his then-15-year-old stepdaughter, C. S. He appeals from the denial of his motion for new trial, contending, among other things, that the trial court erred when it denied his motion to suppress a recording of a telephone conversation between him and the child. Because the state failed, pursuant to OCGA § 16-11-66 (b), to obtain consent for the recording by order of a judge of a superior court upon written application, we reverse.

While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial

court's application of the law to undisputed facts is subject to de novo appellate review.[1]

On March 16, 2010, an indictment was returned filed against London. Counts 1 and 2 of the indictment alleged that London committed the crime of aggravated child molestation "by placing his mouth on [C. S.'s] vagina"; Count 3 alleged that London committed the crime of child molestation "by placing his finger into [C. S.'s] vagina[.]" The offenses were alleged to have been committed "on or between" August 1, 2009 and October 1, 2009.

At trial, C. S. testified that London was married to her mother and that they all lived together on the dates at issue. C. S. testified that sometime in late August 2009, London went into her bedroom and put his mouth on her "privates." London also inserted his finger in C. S.'s "private part." C. S. told London that "it hurt" and London stopped. C. S. testified that on another occasion in early September 2009, London entered her bedroom and put his mouth on her "private." Around October 1, 2009, C. S. disclosed the incidents to her mother, who took C. S. to the police station the following day.

---

[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (citations omitted).

A detective interviewed C. S. and videotaped the interview. C. S. testified that the detective asked her to call London "[t]o get him to admit what he did," but C. S. could not reach London at that time. C. S. went back to the police station two days later; her mother was with her initially, but she had to leave and was not present when C. S. called London from the police station that day. The detective recalled specifically that police had "decided for C. S. to come back in and [C. S.] agreed to . . . come back in . . . October the 4th, and [C. S.] attempted to make another call to [London]." This time, London answered the phone; police conducted what the detective referred to as a "reverse phone call," recorded the conversation with a video device, and reduced the recording to a DVD format.[2]

---

[2] In arguing against the admissibility of the DVD of the "reverse phone call," London's counsel explained, without objection, the process by which C. S.'s telephone conversation with London had been recorded: "[C. S.] was at the police department in the presence of [the detective]. Now, the recording that I've been served notice with, is not a recording from her phone, but it's actually a video recording in which [the detective] was recording the phone call made by [C. S.] to Mr. London." The prosecutor did not dispute defense counsel's statements, and pertinently responded that "[C. S.] transmitted [the conversation] over her speakerphone device and it was subsequently recorded," and that C. S. had consented to the recording, which consent OCGA § 16-11-66 (a) permitted as an exception to obtaining a warrant. Again, without objection, defense counsel later reiterated that "the conversation took place . . . on [C. S.'s] cell phone, which was put on speaker phone and then recorded by a video device by the police department."

3

The court allowed the state to introduce into evidence the DVD, which was played for the jury. The court also allowed the state to introduce a transcript of the conversation that had been recorded and preserved on the DVD. C. S. testified that the transcript was made as she watched the video and that the transcript was true and accurate to the best of her knowledge. Therein, at one point C. S. informed London that she had an impending doctor's appointment, and she wanted to ask London whether he thought the doctor would "find anything." Particularly incriminating to London was the following excerpt.

> [C. S.]: I was just thinking with the fingering and stuff like that they -
> LONDON: No.
> [C. S.]: -may find something.
> LONDON: No.
> [C. S.]: Or in the -
> LONDON: No. Whenever I did stick my finger inside you, it hurt. You understand me?
> [C. S.]: or with the saliva or whatever.
> LONDON: There ain't gonna be nothing, [C. S.]. You wash. Excuse me. You wash every day. Every day. So, it won't wash with soap every day, and your finger, finger went inside of your coochie, too, when you wash sometimes. So, don't worry about none of that. You good. Excuse me. I miss you. I know it, I miss you.

Throughout the conversation, London attempted to assure C. S. that a medical examination would not reveal evidence of "fingering" or of his saliva.

London took the stand, testifying in his own defense. He denied having committed the charged offenses. He also disputed the accuracy of the state's transcript of the reverse phone call recording.

"OCGA § 16-11-62 (4) prohibits any person from intentionally and secretly intercepting a telephone call by use of any device, instrument or apparatus."[3] However, a party to the conversation is not prohibited from recording it.[4] "OCGA § 16-11-66 (a) provides [another] exception to OCGA § 16-11-62 that allows such an interception where one of the parties to the communication has given prior consent."[5] "OCGA § 16-11-66 (b) requires that consent for the recording or divulging of the conversations of a child under the age of 18 years conducted by telephone or

---

[3] *Smith v. State*, 254 Ga. App. 107, 108 (2) (a) (561 SE2d 232) (2002).

[4] See *Fetty v. State*, 268 Ga. 365, 367 (3) (489 SE2d 813) (1997); *Malone v. State*, 246 Ga. App. 882, 883 (541 SE2d 431) (2000); *Bishop v. State*, 241 Ga. App. 517, 519 (1) (526 SE2d 917) (1999) (acknowledging that "OCGA § 16-11-66 provides two specific exceptions [to OCGA § 16-11-62] which allow such interception," the first exception being that a person who is a party to the communication may intercept it); OCGA § 16-11-66 (a).

[5] *Smith*, supra.; see *Hill v. State*, 306 Ga. App. 663, 665 (1) (703 SE2d 98) (2010); *Bishop*, supra.

electronic communication shall be given only by order of a judge of a superior court upon written application."[6] More specifically, "OCGA § 16-11-66 (b) provides that the telephone conversations of a child under 18 years of age may be recorded and divulged if, upon written application by a private citizen, law enforcement agency, or prosecutor's office, a judge of a superior court and the child consent to such taping."[7]

OCGA § 16-11-66 (b) pertinently provides as follows.

After obtaining the consent required by this subsection, the telephonic conversations or electronic communications to which a child under the age of 18 years is a party may be recorded and divulged, and such recording and dissemination may be done by a private citizen, law enforcement agency, or prosecutor's office. Nothing in this subsection shall be construed to require that the recording device be activated by the child. Consent for the recording or divulging of the conversations of a child under the age of 18 years conducted by telephone or electronic communication shall be given only by order of a judge of a superior

[6] *Hill*, supra. The exception provided in OCGA § 16-11-66 (b) authorizing a parent or guardian to give consent does not apply here, where the recording did not take place in the family home. See OCGA § 16-11-66 (d).

[7] *Bishop*, supra (emphasis omitted); see *Gavin v. State*, 292 Ga. App. 402, 405 (664 SE2d 797) (2008) ("the legislature outlined in OCGA § 16-11-66 (b) circumstances under which a child's telephone conversation or electronic communications may be recorded.").

court upon written application, as provided in subsection (c) of this Code section, or by a parent or guardian of said child as provided in subsection (d) of this Code section.

London contends that there was no evidence that C. S. had consented to the conversation being recorded; that the recording clearly had been obtained at the behest of law enforcement and not C. S.; and that because the state had failed to follow the procedure outlined in OCGA § 16-11-66 (b) (which required police to obtain the consent for the recording by order of a judge of a superior court upon written application), the trial court erred in denying his motion to suppress the recording. Analogizing this case to *Malone v. State*,[8] upon which the trial court in the instant case based its ruling denying London's motion for new trial, the state replies that because the telephone conversation was recorded with C. S.'s full knowledge and participation, there was no violation of OCGA § 16-11-66 (b).

But *Malone* is distinguishable. In that case, several persons were involved in the recording of a minor's phone conversation – the alleged child molestation victim (a minor), her mother, and her mother's friend. Thereafter, criminal charges were

---

[8] *Supra.*

7

brought against the defendant, who moved to suppress the audiotape recording.[9] Citing *Fetty v. State*,[10] this court in *Malone* affirmed the trial court's denial of the motion, and held that the recording was admissible because the child "was fully aware that the conversation was being taped [and] . . . she voluntarily participated in the recording of her conversation; in fact, she encouraged it."[11] This court in *Malone* clearly did not construe the circumstances of that case – namely, that the idea to record the conversation had originated with the child, the child had consented to the taping, the mother and a friend had participated in the recording, the child knew that her telephone conversation would be recorded and voluntarily participated in its recording, and the recording was conducted in a home setting – as amounting to "a third party's interception" of the telephone conversation, which type of interception the Supreme Court of Georgia in *Fetty* held was prohibited by OCGA § 16-11-66.[12] And contrary to the state's assertion, in *Malone*, this court stated that "their

---

[9] Id. at 883.

[10] Supra.

[11] *Malone*, supra at 884.

[12] Id.; *Fetty*, supra at 367 (3).

8

conversation was recorded,"[13] without stating that the recording had been done by any particular individual – the child, her mother, or her mother's friend.[14] *Leggs v. State*,[15] upon which the trial court in the instant case relied, is also inapposite, as that case was decided in 1993, before the legislature had amended OCGA § 16-11-66 to include subsections (b) and (c), requiring court approval for recording the private conversations of a minor.[16]

In this case, unlike in *Malone*, there was undeniably third party interception of the conversation by law enforcement. The idea to record the conversation originated with the police, C. S. went to the police station twice at the behest of the police to make the reverse phone call, and police recorded the conversation on their equipment. Moreover, there is no evidence that police had informed C. S. of their intent to record the conversation, let alone evidence that they had obtained C. S.'s consent to record it. In either event, police would still have been required to obtain consent for the recording by a court order pursuant to OCGA § 16-11-66 (b). Notably, the judge

---

[13] *Malone*, supra at 883.

[14] Id.

[15] 207 Ga. App. 399 (428 SE2d 87) (1993).

[16] See *Bishop*, supra at 523 (1) (iii), n. 4 (1999).

would have been authorized to issue such an order only upon finding probable cause that a crime had been committed, determining that the child's participation in the recording would not be harmful to the child, and finding that the child understood that the conversation was to be recorded and that the child *agreed to participate*.[17]

The DVD recording contained incriminating statements by London, and its admission into evidence was not harmless.[18] London took the stand and denied having committed the indicted offenses, and there was no evidence that he had given police any confession or other incriminating statement(s). Nor was there any physical evidence connecting London to the crimes. A sample of carpet from C. S.'s bedroom was tested for the presence of seminal fluid and the results were negative; a sexual assault examination that was performed on C. S. on October 6, 2009, revealed no evidence of injury or of penetration; and the nurse who had conducted the examination made no "assault-related findings." Moreover, during deliberations, the jury asked to view the DVD of the telephone conversation with the transcript.

---

[17] See OCGA § 16-11-66 (c).

[18] See *Dailey v. State*, 313 Ga. App. 809, 816 (1) (723 SE2d 43) (2012) ("to be successful, a claim of error requires a showing of both harm and error") (footnote omitted).

10

Therefore, we cannot conclude the admission of the DVD to be harmless beyond a reasonable doubt.[19]

Because the state failed, pursuant to OCGA § 16-11-66 (b), to obtain a court order giving consent for the recording, and there is a reasonable probability that the improperly admitted evidence contributed to the jury's verdict, we reverse. We note,

---

[19] See generally *Chapman v. California*, 386 U. S. 18, 24 (III), 25 (IV) (87 SCt 824, 17 LE2d 705) (1967) (error of even constitutional magnitude may be harmless if, considering the entire record on appeal, the reviewing court finds beyond a reasonable doubt that the error did not contribute to the verdict). And see *Vaughn v. State*, 248 Ga. 127, 131-32 (2) (281 SE2d 594) (1981) (holding that improper admission of defendant's confession was not harmless and, accordingly, reversing); *Crowder v. State*, 237 Ga. 141, 155 (227 SE2d 23) (1976); *Thompson v. State*, 313 Ga. App. 844, 848-849 (1) (723 SE2d 85) (2012). Compare *Dailey*, supra ("even assuming that the trial court erred by admitting the challenged police statements . . . , the error was harmless in light of the fact that the cited police statements were cumulative of other unchallenged confessions by [the defendant]"); *Linto v. State*, 292 Ga. App. 482, 483 (1) (664 SE2d 856) (2008) ("even if the admission of [defendant's pre-Miranda] statement could somehow be interpreted as error, such admission was harmless because [defendant's] statement . . . was merely cumulative of the admissible statement he provided police the day before") (citations omitted); *Baez v. State*, 297 Ga. App. 893, 895-896 (1) (678 SE2d 583) (2009) ("[a]ssuming arguendo that [the defendant's] statement to [a police officer] should have been excluded because [the defendant] was not re-Mirandized, we find that the admission of the statement was harmless [because] . . . . [the defendant's] statement to [that officer] was merely cumulative of his oral statement to [another police officer]").

11

however, that because the evidence was sufficient to sustain his convictions,[20] London may be re-tried.[21]

*Judgment reversed. Doyle, C. J., concurs. Boggs, J., concurs specially.*

---

[20] See *Hutchinson v. State*, 287 Ga. App. 415, 417-418 (651 SE2d 523) (2007) (physical evidence of the molestation was not required to support convictions for child molestation, aggravated sexual battery, and aggravated child molestation); *Fiek v. State*, 266 Ga. App. 523, 527 (4) (597 SE2d 585) (2004) ("The victims' testimony, standing alone, was sufficient to authorize [the defendant's] convictions on the eighteen counts of child molestation and three counts of aggravated child molestation beyond a reasonable doubt.") (citations omitted); *Spradlin v. State*, 262 Ga. App. 897, 898 (1) (587 SE2d 155) (2003).

[21] See *Thompson*, supra at 849 (permitting retrial when sufficient evidence existed, despite reversing conviction on other grounds).

A15A0751. LONDON v. THE STATE.                                    BO-028

BOGGS, Judge, concurring specially.

I agree with the majority that the State failed to obtain consent for the *recording* and for the *divulging* of the recorded conversation "by order of a judge of a superior court upon written application" as required by OCGA § 16-11-66 (b). But I write separately to note that the *interception* of the conversation by the police may have been permissible pursuant to OCGA § 16-11-66 (a). This subsection provides: "Nothing in Code Section 16-11-62 shall prohibit a person from intercepting a wire, oral, or electronic communication where . . . one of the parties to the communication has given prior consent to such interception." The record contains some evidence that C. S. and her mother did, in fact, consent to police listening in on C. S.'s conversation with London, which took place while her phone was placed in speaker phone mode.

Had the officers desired to provide testimony regarding what they overheard, they would not have been prohibited from doing so by OCGA § 16-11-66 (b). The court order requirement applies only to the recording and the divulging of the recording itself (or "recording and dissemination") as is made evident by OCGA § 16-11-66 (c) (judge must make findings regarding the child's understanding that the conversation is to be recorded and a true and correct copy of the recording shall be returned to the superior court judge to keep under seal). Here, the State opted to play the DVD recording of the call and provide the jury with a transcribed version of call, rather than elict the investigator's testimony as to what he overheard London say during the call. The investigator explained only that the DVD truly and accurately depicted the conversation.

While I agree that a court order was required for the playing of the recording, I believe it is important to note that a court order would not be required had the State chosen instead to elicit testimony about what the investigator overheard during the interception. Because it chose to play the recording, we are constrained to reverse the conviction.

2