## 58922. BAILEY v. THE STATE.

CARLEY, Judge.

Bailey was indicted, tried and convicted of voluntary manslaughter. He appeals.

1. On the night in question, a police officer, on his

regular patrol, heard a shot or "something sounding like a shot," perhaps fireworks. He received a radio dispatch to check out the area for "shooting of fireworks." While investigating for fireworks, the officer spotted Bailey, and approached him to secure information and not to make an accusation. The officer asked Bailey: "How are you doing, Eddie? Have you heard any shooting around here, fireworks or anything?" Bailey replied that he had. The officer then asked "Who?" Then the following colloquy occurred: Bailey: "I shot my brother-in-law." Officer: "What brother-in-law?" Bailey: "O. D. Edwards." Officer: "Well, where is he at now?" Bailey: "He's gone to the hospital. My wife and some people took him to the hospital. Well, I told him to give me the keys and he wouldn't give me the keys. I told him to give me the keys and he wouldn't, so I shot him." Officer: "Well, where is the weapon?" Bailey: "It's in my pocket." Bailey then produced the gun and was at that point informed that he was to be placed under arrest.

At trial, Bailey tried to exclude the testimony of the officer with reference to this colloquy on the ground that at the time he made the statements attributed to him no Miranda warnings had been given. The trial court conducted a Jackson v. Denno hearing and found the statements were made as the result of the officer's "general on-the-scene investigation" and not an "in-custody interrogation." Testimony as to Bailey's pre-Miranda statements was, therefore, allowed into evidence. Bailey enumerates as error the admission of this testimony.

"The principles announced [in Miranda] deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way . . . [Miranda] is not intended to hamper the traditional function of police officers in investigating crime . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by [Miranda]. . . In such situations the compelling atmosphere inherent in the process of in-custody

interrogation is not necessarily present." Miranda v. Arizona, 384 U. S. 436, 477-478 (86 SC 1602, 16 LE2d 694) (1966). Thus, the question to be resolved is when Bailey was, under the circumstances of this case, "in custody or otherwise deprived of his freedom of action in any significant way" in order to trigger the requirement that Miranda warnings be given.

We do not believe Bailey was "in custody" within the meaning of Miranda when the main part of the above quoted colloquy between himself and the officer occurred. One who is under investigative detention pursuant to Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968) or is the subject of a general on-the-scene investigation is not within "custody." *Shy v. State,* 234 Ga. 816, 820 (218 SE2d 599) (1975). Here, it is apparent that when the officer approached Bailey and began to question him, Bailey was not suspected of any crime — most certainly not of manslaughter. Compare *Gainer v. State,* 144 Ga. App. 703 (242 SE2d 286) (1978). The officer sought general information concerning the noise he had heard and was following up on the directive to investigate "fireworks." In response to a non-accusatory question, Bailey volunteered he had "shot" his brother-in-law. At that point there was nothing to indicate that the shooting was *necessarily* the result of Bailey's criminal actions. *Futch v. State,* 145 Ga. App. 485, 488 (3) (243 SE2d 621) (1978); Allen v. United States, 390 F2d 476 (D. C. Cir. 1968). The officer did not "interrogate" for the purpose of establishing Bailey's criminal culpability but inquired as to the name and location of the victim of the "shooting" — the nature of the situation confronting the officer. *Shy v. State,* 234 Ga. 816, 823, supra. Bailey then made a voluntary statement, unresponsive to the question, that the shooting had occurred in a context in which he was exposed to potential criminal culpability — a domestic dispute over keys. *Roberts v. State,* 146 Ga. App. 23 (1) (245 SE2d 358) (1978). It was at that point — *after* Bailey's voluntary statement concerning the nature of the "shooting" — that he was in "custody" within the meaning of Miranda, because not until then did he become the "focus" of a criminal investigation. Miranda v. Arizona, 384 U. S. 436, 444, fn. 4, supra. *Gainer v. State,* 144 Ga. App. 703, supra. Any

inquiries prior to this voluntary statement were clearly non-accusatory and a part of the "on-the-scene" investigation of a possible criminal act. *King v. State,* 147 Ga. App. 163, 164 (1) (248 SE2d 294) (1978); *Futch v. State,* 145 Ga. App. 485, 488 (3), supra. The only question the officer asked Bailey after this point was the location of the weapon, the result of which was the production of the gun and the formal arrest. This single "threshold inquiry" after Bailey was "in custody" but before the Miranda warnings were given was not an impermissible "interrogation." *Tucker v. State,* 237 Ga. 777 (229 SE2d 617) (1976).

Contrary to this analysis Bailey urges that he was "in custody" when he made the *first* response that he "had shot his brother-in-law" and that all responses to inquiries thereafter were made in violation of Miranda. The basis of this argument is that at the Jackson v. Denno hearing the officer agreed with defense counsel that in his (the officer's) mind Bailey was "under arrest" after saying he had shot his brother-in-law. However, it is apparent from the *entire* transcript of the officer's testimony that he was referring not to the first response concerning the mere "shooting" but to the second response concerning the "shooting" over a dispute involving keys. This is clear from the officer's testimony that he knew "at the time" that Bailey made the second admission and produced the gun that "[he] had no particular case against [Bailey] even though [Bailey] had told [him] that there had been a shooting out there." Thus any detention before the second admission was clearly for purposes of "preliminary investigation" and not for "custodial interrogation."

The evidence here amply supports the trial court's finding that there was no violation of Bailey's Miranda rights and the decision to admit the statements will not be disturbed. *Westley v. State,* 143 Ga. App. 344, 345 (2) (238 SE2d 701) (1977).

2. The evidence authorizes the verdict. *Durham v. State,* 129 Ga. App. 5 (1) (198 SE2d 387) (1973). After a review of the entire record, we find that a rational trior of fact could reasonably have found from the evidence adduced at trial proof of Bailey's guilt beyond a reasonable doubt. Jackson v. Virginia, — U. S. — (99 SC 2781, 61

LE2d 560) (1979).

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

SUBMITTED NOVEMBER 6, 1979 — DECIDED JANUARY 25, 1980.

*William C. McCalley,* for appellant.

*H. Lamar Cole, District Attorney, Dwight May, Assistant District Attorney,* for appellee.