## A10A0086. THE STATE v. CURLES.

(696 SE2d 89)

DOYLE, Judge.

In this DUI prosecution, the State appeals from the trial court's grant of Seth Weston Curles's motion to suppress his statements to police and the results of field sobriety, breathalyzer, and blood alcohol tests. We reverse, for reasons that follow.

> In reviewing a trial court's decision on a motion to suppress which in effect precludes the prosecution of a criminal defendant, our responsibility is to ensure that there was a substantial basis for the decision. To that end, we will not disturb a trial court's factual findings if there is any evidence to support them and, in reviewing that evidence, we defer to the trial court's judgment on issues of witness credibility and the weight to be afforded the evi-

---

dence presented. We review de novo, however, the trial court's application of the law to undisputed facts.[1]

So viewed, the record shows that on February 22, 2008, Officer Dan Robertson responded to a call from a concerned citizen regarding a suspected DUI offense. The citizen followed the suspect, who was driving an SUV, to a residence, and Robertson arrived soon thereafter, at approximately 5:30 a.m. According to the citizen, a white, teenaged male backed the SUV into the mailbox next door before parking in the driveway and then "stagger[ing]" into the front door of the residence. Robertson examined the SUV and observed a broken taillight lens. Robertson then found a portion of a taillight lens on the mailbox next door and a larger piece of lens at the base of the mailbox. The officer also ran the license plate of the SUV and confirmed that the vehicle was registered to an owner at the residence where it was parked.

Robertson testified that he and at least one other officer approached the house and knocked on the door. A woman answered, and because it was raining, the officers asked for permission to enter the house, and the woman agreed. The police briefly told her about the SUV, and she indicated that her son drove it. The officers asked to speak to her son, and she stated that he was asleep and agreed to get him. Curles, who was dressed in street clothes, appeared and walked downstairs to where the officers were waiting in the foyer. According to Robertson, Curles "had glassy, bloodshot eyes and the odor of an alcoholic beverage on his breath."

The police told Curles and his mother that a citizen had followed the SUV to the residence and observed a teenaged male enter the house.[2] Robertson asked Curles what he had been doing, and Curles replied that he was sleeping. Robertson then asked Curles whether he would be willing to accompany the police outside, and Curles agreed. Robertson showed Curles the broken taillight on the SUV and the lens pieces near the mailbox next door. Curles then told Robertson that he thought "I just hit the bushes," and Robertson arrested him at the scene.

Curles also testified at the motion to suppress hearing, and he stated that after his mother woke him, he dressed in clothes and slippers and walked out of his room, where he saw four uniformed police officers in the foyer. Curles started to walk down the hall toward the bathroom (which was in the opposite direction of the foyer), and one of the officers said, "[W]e know you're drunk, come

---

[1] (Citations and punctuation omitted.) *State v. Rish*, 295 Ga. App. 815 (673 SE2d 259) (2009).

[2] Curles was 19 at the time of his arrest.

downstairs." Curles admitted that he never told the officers that he needed to use the bathroom. And although he stated that he went downstairs "of my own free will," he also testified that he did not continue on to the bathroom "[b]ecause basically they were in control and told me to come downstairs. I had no other choice." Curles further testified that he accompanied the officers outside because he did not believe he could refuse the request.

Following the hearing, the trial court granted Curles's motion to suppress, noting that "[t]he police were in his home at an unreasonable hour[,] and the officers were in full uniform and gear, including weapons," they "refused to allow [Curles] to use the restroom," and they "told him to come outside his home for questioning while it was dark, cold, and rainy." The trial court concluded that

> [a] reasonable person would not have believed he was free to leave[,] . . . and Mr. Curles should have been advised of his *Miranda*[3] rights prior to questioning. . . . The Defendant was in custody from the moment the [o]fficers asked him to step outside the house. . . . [T]he Defendant's statements made to police, the field sobriety evaluations, the Alco-Sensor test, and the State Administered Blood Alcohol test are suppressed.

On appeal, the State contends that the trial court erred by concluding that the police refused to allow Curles to use the restroom and that the officers told him to step outside. The State further argues that no reasonable person in Curles's situation would have perceived that he was in custody before he was placed under arrest. We agree.

> A person is considered to be in custody and *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary.[4]

"Thus, the [relevant] inquiry is how a reasonable person in [Curles's] position would perceive his situation."[5] Our Supreme

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[4] (Citation and punctuation omitted.) *Sewell v. State*, 283 Ga. 558, 560-561 (2) (662 SE2d 537) (2008).

[5] *State v. Folsom*, 285 Ga. 11, 13 (1) (673 SE2d 210) (2009).

Court has explained that

> the subjective views of the interrogator and suspect are not dispositive of whether a person is in custody for the purposes of *Miranda* warnings. . . . [W]hether the police had probable cause to arrest and whether the defendant was the focus of the investigation are irrelevant considerations for *Miranda* purposes. The relevant inquiry is how a reasonable person in the suspect's position would perceive his situation.[6]

Here, the State is correct that the trial court misconstrued the testimony at the suppression hearing. Although Curles stated that he believed that he had to go downstairs to talk with the police instead of continuing down the hall to use the bathroom, he admitted that he never told the officers that he needed to use the bathroom. And pretermitting whether the officers told Curles to step outside or requested that he do so, the evidence did not authorize the trial court's conclusion that a reasonable person in Curles's position would have believed that his freedom of movement was restrained to the degree associated with a formal arrest.[7] Accordingly, because the officers' requests did not render Curles in custody for purposes of *Miranda*, the trial court erred in excluding evidence of what occurred after he left his house on the ground that he was not then given *Miranda* warnings.[8]

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MAY 28, 2010.

*Barry E. Morgan, Solicitor-General, Jeffrey A. Johnson, Assistant Solicitor-General*, for appellant.

---

[6] (Citations and punctuation omitted.) Id.

[7] See *Monahan v. State*, 292 Ga. App. 655, 658-659 (1) (665 SE2d 387) (2008) (motion to suppress properly denied because officer's request that a DUI suspect step outside of her home to talk to the police did not render her in custody for *Miranda* purposes); *Amin v. State*, 283 Ga. App. 830, 831-833 (1) (643 SE2d 4) (2007) (DUI suspect was not in custody for *Miranda* purposes when a police officer questioned him in a restaurant, took his driver's license, asked him to step outside, and then performed field sobriety evaluations before arresting him); *State v. Foster*, 255 Ga. App. 704, 706 (566 SE2d 418) (2002) (reversing exclusion of field sobriety tests based on defendant's argument that he was not given *Miranda* warnings where the tests were administered after the officer told the defendant not to drive because he was visibly drunk, instructed him to remain in the back seat of his vehicle, admonished the suspect that he would be arrested if he drove the car under the influence, watched the suspect climb into the front seat and drive the car away from the scene, and then asked the suspect to exit the car after he found it behind a building).

[8] See *State v. Lupuloff*, 301 Ga. App. 513, 514 (687 SE2d 861) (2009); *Monahan*, 292 Ga. App. at 659 (1).