S10A0335. SOSNIAK v. THE STATE.
(695 SE2d 604)

MELTON, Justice.

This is an interim appellate review of a case in which the State seeks the death penalty. Marcin "Martin" Sosniak and his co-defendants, Jason McGhee and Frank Ortegon, have been indicted for four counts each of malice murder and felony murder in connection with the deaths of Kyle Jones, Mariel Hannah, William Osment, and Lynn Bartlett, as well as for related crimes. The crimes occurred on March 19, 2006, at a residence in Forsyth County. This Court granted Sosniak's application for interim review and directed the parties to address whether the trial court erred in its order denying Sosniak's motion to exclude his statements to law enforcement officers and any evidence obtained as a result and in its order addressing the admissibility of certain victim impact evidence. For the reasons set forth below, we affirm.

1. Sosniak claims that the trial court erred in finding admissible statements that he made to Detectives Moore and Cox of the Forsyth County Sheriff's Office on March 20, March 23, and March 29, 2006. "The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. [Cit.]" *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008). "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility

relating to the admissibility of the defendant's statement at a *Jackson-Denno* hearing will be upheld on appeal. [Cit.]" *Grier v. State*, 273 Ga. 363, 365 (2) (541 SE2d 369) (2001). See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). However, " '(w)here controlling facts are not in dispute, . . . such as those facts discernible from a videotape, our review is de novo. [Cit.]" *Vergara*, 283 Ga. at 178 (1).

*A. Statements of March 20, 2006.*

(1) *Pre-Miranda statements*. Sosniak claims that he was in custody and, thus, that the statements of his March 20 interview prior to his being apprised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), are inadmissible.

> A person is considered to be in custody and *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. Thus, the relative inquiry is how a reasonable person in [Sosniak]'s position would perceive his situation.

(Citations and punctuation omitted.) *State v. Folsom*, 285 Ga. 11, 12-13 (1) (673 SE2d 210) (2009). In other words, the inquiry properly focuses upon "the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer." *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998).

The testimony at the *Jackson-Denno* hearing showed the following. After receiving a page at 10:45 p.m. on the date of the murders and reporting to the crime scene, Detective Moore went to the Criminal Investigations Division of the Sheriff's Office (CID), where he interviewed witnesses. At that time, he received information that Sosniak was one of three males that had been at the crime scene about a half hour prior to the crimes. As a result, sometime in the early morning hours of March 20, four to five officers from the Forsyth County Sheriff's Office went to Sosniak's residence. When Sosniak's mother opened the door to the officers, they entered and told her that they were looking for Sosniak. Sosniak's mother went upstairs and awakened Sosniak, who came downstairs and conversed with the officers. Then Sosniak went outside, where he was handcuffed, placed in a patrol car, and taken to the CID. Sosniak waited in the foyer of the CID until he was approached by Detective Moore, who testified that Sosniak was not handcuffed at the time that they met. Detective Moore's testimony also established that Sosniak was

handcuffed for transport to the CID pursuant to a departmental policy for officers' safety, that the handcuffs were removed upon Sosniak's arrival at the CID, that the CID did not have a holding cell or a booking area and was not locked for those wishing to exit, and that the interview room was not locked.

The two-hour interview was videotaped, and the videotape, played before the trial court, showed the following. Sosniak was not handcuffed or physically restrained in any way when he entered the interview room at 5:15 a.m. After obtaining basic information from him, Detective Moore told Sosniak that he was "not under arrest for anything" and that he just needed to talk to him "about some stuff tonight, that's all." Sosniak indicated that he was agreeable to that. Sosniak initially denied knowing that the crimes had taken place or being at the location of the crimes shortly before they occurred, and the first hour of the interview was spent addressing Sosniak's denial of that information. Detective Moore told Sosniak that he knew that Sosniak was not being completely truthful, and he encouraged Sosniak to tell the truth. However, Detective Moore was neither hostile nor accusatory toward him. At one point during the interview, Detective Moore asked Sosniak if he would be attending his college class "tomorrow," and Sosniak responded that he would be. Detective Moore's question would indicate to a reasonable person in Sosniak's position that he was not being "restrained to the degree associated with a formal arrest." *Folsom*, 285 Ga. at 12 (1). Although Sosniak once stated, "I'm exhausted, I'm tired, all I want to do is just go home," he made no effort to get up and leave, and he immediately re-engaged Detective Moore by asking, "What is this all about, is what I would like to know?" While Detective Moore told Sosniak that he had "a lot riding on this," he did nothing that would indicate to Sosniak that he was not free to leave, and he testified that, had Sosniak pursued leaving, the Sheriff's Office would have provided a ride for him.

There is no merit to Sosniak's contention that, because Detective Moore did not inform him that he considered him to be a suspect and did not apprise him of the nature of the crimes that he was suspected of being involved in, his statements are inadmissible. "[A] police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of *Miranda*. [Cit.]" *Stansbury v. California*, 511 U. S. 318, 324 (II) (114 SC 1526, 128 LE2d 293) (1994). The relevant inquiry remains how a reasonable person in Sosniak's position would have perceived his situation. See *McAllister v. State*, 270 Ga. 224, 228 (1) (507 SE2d 448) (1998).

We conclude that the trial court was authorized to find that, under the totality of the circumstances, a reasonable person in

Sosniak's position would not have believed that he was in custody prior to the time that he was read the *Miranda* rights. See *Bell v. State*, 280 Ga. 562, 563 (2) (629 SE2d 213) (2006) (finding that a defendant was not in custody for purposes of *Miranda* where he was handcuffed pursuant to police protocol during the execution of a no-knock search warrant and was driven in a patrol car to police barracks where he was released from handcuffs, was free to move about so long as he remained in an officer's presence, and was advised that he was free to leave at any time). Compare *State v. Folsom*, 286 Ga. 105, 108 (1) (686 SE2d 239) (2009) (affirming the trial court's determination that the defendant was in custody during pre-*Miranda* questioning where the defendant was required to come to the police station by officers who waited at his home and followed him to the station, was never told that he was free to leave, was kept either under surveillance or in a closed interrogation room for six hours, was explicitly told that evidence pointed toward him, and was repeatedly asked incriminating questions).

(2) *Post-Miranda statements*. Almost an hour and a half into the interview, Sosniak acknowledged that he had been at the residence where the shootings occurred on the previous evening. Shortly afterward, he admitted hearing gunshots while there. Detective Moore testified that, once Sosniak made that admission, he was no longer free to leave. Our review of the videotape shows that, at the point when Sosniak admitted hearing gunshots, Detective Moore stopped the interview and read Sosniak the *Miranda* rights. When Detective Moore asked Sosniak if he understood his rights and if he and Sosniak were "still good to talk," Sosniak nodded affirmatively, effectively waiving his rights. See *Spain v. State*, 243 Ga. 15, 16 (1) (252 SE2d 436) (1979) ("There is no constitutional requirement that waiver of constitutional rights be in writing."). Upon our review of the transcript of the *Jackson-Denno* hearing and the videotape of the interview reviewed by the trial court, we find no error in the trial court's ruling that this statement was given knowingly, freely, and voluntarily after Sosniak had been properly advised of and had waived his *Miranda* rights. See *Bell*, 280 Ga. at 565 (2) (b).

B. *Statements of March 23, 2006.*

On March 20, 2006, Sosniak signed a waiver of appointed counsel form and retained attorney John Stokes to represent him. On March 23, 2006, Detectives Moore and Cox met with Sosniak and Stokes for Sosniak's second interview. This interview began at 1:20 p.m., took place in the same interview room as the first interview, lasted approximately an hour, and was also videotaped. A review of the videotape shows that Detective Moore again read Sosniak his *Miranda* rights and that both Stokes and Sosniak indicated that Sosniak understood his rights.

At this interview, Sosniak provided a written statement that he had previously prepared in which he gave the same version of events that he relayed in this interview and in the March 20 interview. Sosniak has offered no grounds upon which to find this written statement inadmissible, and we conclude that the trial court did not err in ruling that it was admissible.

During this interview, Sosniak twice volunteered to show the detectives the location where the murder weapon was allegedly thrown into a lake. The detectives stepped out of the interview room, and Stokes and Sosniak discussed the case, apparently unaware that the video camera was still recording. The trial court properly found that Sosniak's statements here were protected by the attorney-client privilege and, thus, were inadmissible. See OCGA § 24-9-21 (2) (excluding communications between attorney and client).

After the detectives returned, they were discussing riding arrangements to the lake when the following conversation transpired.

| | |
|---|---|
| Mr. Stokes: | I don't think I need to go. |
| Detective Cox: | Okay. All right. |
| Mr. Stokes: | I supposed [sic] you're going to have to get divers or something. |
| Detective Cox: | We're working on that. We'll probably be out there in a little bit of time. |
| Detective Moore: | Martin, are you okay with going with just us without Mr. Stokes present? |
| Mr. Sosniak: | Yeah. |
| Detective Cox: | Once we get done, we're going to bring you back here and just kind of go over some of the details, like specifically the note[1] and stuff like that, would you have any problems with us talking to him outside your presence? |
| Mr. Stokes: | Do you have a contention? |
| Mr. Sosniak: | (No audible response) |
| Mr. Stokes: | I think we're on track as far as the (Inaudible) |
| Detective Moore: | Martin has been cooperative. We appreciated it and it will be noted and passed on. |
| Mr. Stokes: | Okay. Very good. And I'll be talking to him and talking to y'all, I guess. |
| Detective Cox: | Okay. I'll tell you what I'll do is, as soon as we get done this afternoon I'll call you — |

---

[1] Detective Cox referred to Sosniak's written statement as "the note" several times during the interview.

| | |
|---|---|
| Mr. Stokes: | Okay. |
| Detective Cox: | — and just kind of let you know that we're done. |
| Mr. Stokes: | Okay. |
| Detective Cox: | — And some of the information that was passed on, that we have a good line of communication between the two of us. |

Our review of the videotape shows that the trial court did not err in finding that, while Sosniak did not give an audible response to Stokes when Stokes asked him whether he had an objection to speaking with detectives outside of Stokes's presence, Sosniak shook his head negatively, indicating that he was agreeable to the detectives' questioning him without his attorney present upon their return to the CID.

Detective Cox testified at the *Jackson-Denno* hearing that he confirmed with Stokes outside the interview room that the detectives also intended to take Sosniak to the crime scene. However, Stokes testified that he did *not* know the detectives planned to go to the crime scene. "The trial court was entitled to weigh the credibility of witnesses testifying at the hearing, and to believe the more credible witness." *Hardin*, 269 Ga. at 4 (2) (c). We are bound by the trial court's findings here, as they are not clearly erroneous. Id. Furthermore, our review of the record shows that Stokes's recollection of events during his testimony at the suppression hearing was inconsistent with the record on several points. For instance, he denied that any discussion regarding Sosniak's being further interviewed upon returning to the CID took place, but the videotape clearly contradicts that testimony.

Sosniak accompanied the detectives to the lake, where he pointed out the location where the murder weapon was thrown, and to the crime scene, where he reviewed the incident with the detectives. The detectives testified that, during the visits to the lake and the crime scene, no promises or threats were made to Sosniak and that Sosniak never indicated to them that he wished to cease speaking to them or that he wanted his lawyer present.

Upon returning to the CID, the detectives took Sosniak back to the same interview room where the interview had taken place that morning and continued their interview with him. This interview, which began at 4:07 p.m., was also videotaped. A review of that tape and the transcript of the *Jackson-Denno* hearing shows that Detective Moore advised Sosniak at the beginning of this portion of the

interview as follows:

> When we first came in here ... [w]e re-read you your *Miranda* rights. And at that time Mr. Stokes said that you understood your rights. You said you understood your rights. And you've been working with us ever since.
>
> This is the same day. ... So, I just want to make sure that you still understand your rights. And that you don't have to talk to us if you don't want to.

After Sosniak responded that he just wanted to help himself, Detective Moore repeated that Sosniak did not have to talk to the detectives if he did not wish to do so, and then he asked: "And you still know that you have the right to an attorney and have [him] present if you wish and all that?" and "So, with that in mind [do] you still wish to continue to answer questions and talk[ ] with us about the situation?" Sosniak answered affirmatively to both questions. The trial court's finding that the March 23 interviews constituted a continuing interrogation is supported by the record, and the detectives had no duty to repeat the entire *Miranda* warnings before reinitiating the interview. See *Williams v. State*, 244 Ga. 485, 488 (4) (b) (260 SE2d 879) (1979) (holding that there was "no duty to repeat the *Miranda* warnings given the day before where ... the interviews were part of a continuing interrogation").

Sosniak maintains that he had invoked his right to counsel "as of March 23," that the detectives initiated further contact, and, therefore, that his statements to the detectives after his counsel's departure are inadmissible under the bright-line rule of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). Under *Edwards*, once an accused has invoked his Fifth Amendment right to have counsel present during custodial interrogation, any subsequent waivers are insufficient to justify police-initiated interrogation. Id. at 484-485 (II). "*Edwards* is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.'" *Minnick v. Mississippi*, 498 U. S. 146, 150 (111 SC 486, 112 LE2d 489) (1990) (quoting *Michigan v. Harvey*, 494 U. S. 344, 350 (110 SC 1176, 108 LE2d 293) (1990)).

Sosniak has not pointed to, nor has our review revealed, anything in the record showing that, prior to March 23, Sosniak invoked his Fifth Amendment right to counsel during custodial interrogation under *Miranda*.[2] Furthermore, even assuming that Sosniak made a

---

[2] Any claim by Sosniak that the detectives violated the rule of *Edwards* under his Sixth Amendment right to counsel would be unavailable. See *Montejo v. Louisiana*, ___ U. S. ___ (129

clear assertion of the right to counsel prior to March 23, we find no violation of the *Edwards* rule here. While *Edwards* bars police-initiated interrogation in counsel's absence, it does not bar police-initiated interrogation in the presence of counsel. See *Minnick* at 152. Therefore, counsel's presence at the first March 23 interview rendered *Edwards* inapplicable. As discussed above, a review of the record, including the videotape, supports the trial court's finding that Sosniak was given access to his lawyer and that, in his lawyer's presence, Sosniak was read his *Miranda* rights, indicated that he understood them, and waived the presence of counsel during the visit to the lake and the crime scene and during the interview afterward at the CID. Accordingly, the trial court did not err in denying Sosniak's challenge based on an alleged *Edwards* violation.

Sosniak also contends that the trial court erred in finding that his statements were voluntary and, thus, admissible under OCGA § 24-3-50.

> OCGA § 24-3-50 requires that an admissible confession "must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect. Generally, the "hope of benefit" to which the statute refers has been construed as a hope of lighter punishment.

(Citations and punctuation omitted.) *Foster v. State*, 283 Ga. 484, 485-486 (2) (660 SE2d 521) (2008).

At one point during this interview, Detective Cox stated that he was "trying to get an idea of how honest" Sosniak was going to be with them, because he knew that Sosniak's co-defendant was going to be honest. Then he asked Sosniak, "Who's going to be honest first?" Sosniak contends that Detective Cox indicated by his remarks that Sosniak would be rewarded for his cooperation. Our review of the record reveals that the detective's comments amounted to no more than exhortations to Sosniak to be truthful. "[A]dmonitions to tell the truth will not invalidate a confession." *State v. Roberts*, 273 Ga. 514, 516 (3) (543 SE2d 725) (2001), overruled on other grounds by *Vergara*, supra, 283 Ga. at 178 (1). Sosniak also contends that Detective Cox's remark that one of Sosniak's co-defendants wanted to cooperate and would throw his co-defendants "under the . . . bus"

SC 2079, 173 LE2d 955) (2009) (overruling *Michigan v. Jackson*, 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986) (holding that the *Edwards* rule also applied to a defendant's Sixth Amendment right to counsel).

was a threat about what would happen to Sosniak if he did not cooperate. This comment was also an exhortation to be truthful and could not reasonably be interpreted as a threat of the type that would render Sosniak's statement involuntary. See *Mangrum v. State*, 285 Ga. 676, 678 (2) (681 SE2d 130) (2009) (stating that a threat of injury within the meaning of the statute refers to a threat of physical or mental harm).

Detective Moore's statement that there would be "no further charges" regarding "any drugs or any intent to distribute" was made in the context of encouraging Sosniak to be truthful regarding his activities leading up to the time of the crimes, even if those activities involved drugs. The detectives never promised or gave hope to Sosniak that he would receive a lighter punishment in exchange for a confession to the crimes with which he was charged.

Examining the totality of the circumstances, we conclude that the trial court did not err in ruling that Sosniak's March 23 statement made outside the presence of counsel was voluntary and admissible. Compare *Canty v. State*, 286 Ga. 608, 610-611 (690 SE2d 609) (2010) (reversing the trial court's finding that a defendant's confession was voluntary where the defendant was told that confessing to the crime could result in a "shorter term").

The trial court also denied Sosniak's claim that the entirety of his March 23 statements should be suppressed because he received ineffective assistance of counsel. Although we directed the parties to address that issue in this appeal, Sosniak omitted entirely both argument and any citation of authority regarding it in his brief.[3] Accordingly, we deem as abandoned under Supreme Court Rule 22 any assertion that this trial court ruling was error. See *Felix v. State*, 271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999); *Hayes v. State*, 261 Ga. 439, 444 (6) (d) (405 SE2d 660) (1991).

*C. Statements of March 29, 2006.*

At approximately 10:15 a.m. on March 29, Detective Cox interviewed Sosniak in Stokes's presence in an interview room at the CID. The interview was recorded, and a review of the videotape shows that, at the beginning of the interview, Detective Cox read Sosniak his *Miranda* rights and that Sosniak and Stokes both confirmed that Sosniak understood his rights. As in the interview on March 23, the

---

[3] In fact, Sosniak's counsel expressed at oral argument his belief that it is premature to address the issue of ineffective assistance of counsel at this point in the proceedings, as prejudice that could affect the outcome of the case cannot yet be shown. See, e.g., *Terry v. State*, 284 Ga. 119 (2) (663 SE2d 704) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) (To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.).

trial court properly found inadmissible the statements between Sosniak and his attorney while they were alone in the interview room. See OCGA § 24-9-21 (2).

Sosniak contends that his statements during this interview were induced by a hope of benefit. Near the beginning of the interview, Detective Cox stated: "Right now, you need to be thinking about you and what's . . . going to get you out of jail so you can see your kid out in California, not wearing a Georgia Department of Corrections outfit." Sosniak maintains that Detective Cox's remark was intended to imply that, if he cooperated with the detectives, he could go free. After reviewing the remark in context, we conclude that it was a small part of the detective's lengthy opening comments made to Sosniak before the actual interview to encourage him to tell the truth. Detective Cox stated to Sosniak that, because Sosniak had previously been "ripped off" by the "obvious[ ] target of the incident" and because he had purchased the gun used in the murders with one of the co-defendants shortly before the incident, he was "in just as deep" as that co-defendant. Therefore, Detective Cox emphasized, it was important that Sosniak be truthful in order to strengthen his credibility with the officers.

In addition to considering the context of Detective Cox's remark about seeing his child, we have considered the fact that Sosniak was represented by counsel throughout this interview. The trial court found credible Detective Cox's testimony that, prior to the interview, he told Stokes that only the district attorney could make a deal and that all he could do was provide information as to who had been cooperative. See *Arline v. State*, 264 Ga. 843, 844 (2) (452 SE2d 115) (1995) (stating that "telling a defendant that his or her cooperation will be made known to the prosecution does not constitute the 'hope of benefit' sufficient to render a statement inadmissible"). Stokes testified that neither law enforcement nor the district attorney made any promises regarding specific charges or the disposition of the case in exchange for Sosniak's cooperation, that he never expected the charges against Sosniak to be dismissed, and that he told Sosniak that cooperation with law enforcement might be in his best interest in regard to punishment. After Detective Cox's introductory comments, which included the remark about seeing his child, Stokes asked Sosniak whether he understood what Detective Cox was telling him, and Sosniak indicated that he did and that it was essentially what Stokes had told him. The trial court did not err in holding that, under the totality of the circumstances, the remark to Sosniak did not constitute a hope of benefit under OCGA § 24-3-50.

We also find no merit to Sosniak's contention that his statement was induced by a threat of injury because Detective Cox told him and Stokes that the prosecution was "already looking at a death penalty

case" and that Sosniak could "get a needle." Detective Cox's statements "amounted to no more than an explanation of the seriousness of [Sosniak]'s situation." *Preston v. State*, 282 Ga. 210, 212 (2) (647 SE2d 260) (2007) (upholding the admissibility of a defendant's statement where the officer discussed the death penalty and asked the defendant to permit him to help him).

Considering the totality of the circumstances, we conclude that the trial court correctly found that Sosniak's March 29 statement was voluntary and admissible. See *Lee v. State*, 270 Ga. 798, 800 (2) (514 SE2d 1) (1999).

2. Although directed by this Court to address whether the trial court erred in its order addressing the admissibility of certain victim impact evidence, see OCGA § 17-10-1.2, Sosniak omitted entirely both argument and any citation of authority regarding this issue in his brief.[4] Accordingly, we deem as abandoned under Supreme Court Rule 22 any assertion that this trial court ruling was error. See *Felix*, 271 Ga. at 539, n. 6; *Hayes*, 261 Ga. at 444 (6) (d). See also *Butts v. State*, 273 Ga. 760, 771 (31) (546 SE2d 472) (2001) (stating that "counsel may not add enumerations of error by way of oral argument").

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 7, 2010.

*Charles G. Haldi, Jr., William A. Finch*, for appellant.
*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellee.

---

[4] At oral argument, Sosniak's counsel expressed his belief that the current law in this area would favor the admission of this evidence, and that the law in this area was unlikely to change.