### A11A1798. THOMPSON v. THE STATE.
(723 SE2d 85)

DILLARD, Judge.

Following a jury trial, Jimmie Thompson was convicted of burglary and sentenced as a recidivist. Prior to trial, Thompson filed a motion to suppress statements made to law enforcement without the benefit of *Miranda* warnings. The trial court denied Thompson's motion. On appeal, Thompson argues that (1) the trial court erred in denying his motion to suppress, (2) the evidence was insufficient to find him guilty beyond a reasonable doubt, and (3) he received ineffective assistance of counsel. Because the trial court erred in denying Thompson's motion to suppress, we are constrained to reverse his conviction.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on August 1, 2008, Mother's Finest Daycare and Learning Center sat vacant and unused, having closed eight months prior. Nevertheless, the daycare center's owner checked the premises

---

[1] *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

weekly and left various items stored inside, including two vacuum cleaners and a carpet shampooer. On the day in question, the owner was notified by law enforcement that the daycare center had been burglarized. Indeed, a door had been pried open and the inside was amiss with fans, a television set, and kitchen appliances running; trash strewn about; and several items missing. Among the items the owner identified as missing were a vacuum cleaner with a taped, broken handle and a carpet shampooer.

Earlier in the day, a resident of the area surrounding the daycare center observed Thompson walking down the street toward a gas station with what appeared to be two vacuum cleaners. A short while later, he watched as Thompson entered the vacant daycare center, and law enforcement was notified accordingly. Another witness encountered Thompson around this same time at the gas station down the street from the center. Thompson entered the station's store with what appeared to be two vacuum cleaners, asking if anyone would like to purchase them. He exited the store at one point and reemerged with only one of the devices, presumably having sold the other. The witness, who was also familiar with the daycare center, recognized one of the vacuums in Thompson's possession by its taped, broken handle. And when Thompson left the gas station, the witness noticed that he was walking back toward the center.

Law enforcement, having been informed that somebody had entered the vacant building, responded to the daycare center. One officer, Officer Findley, spoke with witnesses who described the suspect and what they had observed. The officer then proceeded to the gas station down the road to look for the suspect. Meanwhile, another officer, Officer Edelkind, responded to the scene behind the daycare center and encountered Thompson, who matched the suspect's description. Officer Edelkind approached Thompson and asked where he was coming from and if he would empty his pockets before a pat-down. Thompson complied with this request and removed items from his pockets, including a crack pipe and push rods.[2] The officer proceeded to ask Thompson when he had last used drugs, and Thompson replied that he had just spent his last $5 on drugs. Thompson also admitted to owning the crack pipe.

Shortly after Thompson emptied his pockets of the drug paraphernalia, Officer Findley returned to the daycare center after hearing over the radio that Officer Edelkind had stopped an indi-

---

[2] For those unfamiliar with street jargon, a "push rod" is defined as "[a] small, but long cylindric object used to push crack residue to [the] end of the pipe[,] enabling one last hit before the hunt for the next rock continues," and it is "[u]sually carried by the biggest fiend, but more often than not given to the rock buyer." Urban Dictionary, http://www.urbandictionary.com/define.php?term=push+rod (retrieved Jan. 19, 2012).

vidual matching the suspect's description. Officer Findley approached Thompson and immediately asked "where did he put the vacuums[?]" Thompson responded that he had sold them for $5. Thereafter, Thompson was placed under arrest at the direction of a detective.

Prior to trial, Thompson sought to suppress the statements he made to law enforcement, claiming that he was in custody and should have been read his *Miranda* rights. But the trial court denied Thompson's motion, and a jury found him guilty of burglary. He was then sentenced as a recidivist to twenty years with ten years to serve. This appeal by Thompson follows.

At the outset, we note that after a defendant has been convicted, "we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence."[3] And we do not weigh the evidence or determine witness credibility, "but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[4] With these guiding principles in mind, we will now address Thompson's enumerations of error.

1. Thompson contends that the trial court erred in denying his motion to suppress the statements he made to law enforcement without the benefit of *Miranda* warnings. We agree and, thus, reverse his conviction.

First, we note that "[u]nless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson-Denno* hearing will be upheld on appeal."[5] And in conducting our review, "we may consider trial testimony in addition to the testimony submitted during the motion to suppress hearing."[6]

In the case sub judice, Thompson claims that he was in custody when Officer Findley questioned him about the vacuum cleaners and, thus, that his statements should have been suppressed because he had not been apprised of his *Miranda* rights. For *Miranda* purposes, a person is "in custody" when either formally arrested or restrained to the degree associated with formal arrest.[7] But "[u]nless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary."[8] This inquiry

---

[3] *Powell*, 310 Ga. App. at 144.

[4] *Id.*

[5] *Sosniak v. State*, 287 Ga. 279, 279-80 (1) (695 SE2d 604) (2010) (punctuation omitted).

[6] *Campbell v. State*, 313 Ga. App. 436, 436 (721 SE2d 649) (2011) (punctuation omitted).

[7] *Sosniak*, 287 Ga. at 280 (1) (A) (1); *see also Timmreck v. State*, 285 Ga. 39, 41 (2) (673 SE2d 198) (2009); *Boone v. State*, 293 Ga. App. 654, 658 (3) (b) (667 SE2d 880) (2008).

[8] *Sosniak*, 287 Ga. at 280 (1) (A) (1) (punctuation omitted); *see also Timmreck*, 285 Ga.

focuses upon "the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer."[9]

Here, testimony at both the motion-to-suppress hearing and trial revealed that after Officer Edelkind asked Thompson to empty his pockets prior to a pat-down, Thompson was found to be in possession of a crack pipe and push rods. Thompson then admitted to recently purchasing and using crack, and the contents of Thompson's pockets were placed on top of the patrol car while he was detained. Approximately ten minutes later, Officer Findley returned to the daycare center, approached Thompson as he was being detained beside Officer Edelkind's patrol car, and immediately questioned Thompson as to what happened to the vacuum cleaners.[10] According to both officers, following his admission, Thompson was placed in the back of the patrol car and officially placed under arrest when a detective arrived.

Thompson argued at the motion-to-suppress hearing, and throughout and after the trial, that his statement to Officer Findley—i.e., that he sold the vacuum cleaners for $5—was made while in custody. But after considering the question, the trial court denied Thompson's motion to suppress, finding that no reasonable person in Thompson's position would have perceived himself to be in custody.[11] In so holding, the trial court clearly erred.

Although Thompson was not handcuffed or told that he was under arrest, the officer confiscated the contents of his pockets by placing the items on the patrol car before continuing to detain him.[12] Under these circumstances, after producing drug paraphernalia, admitting to owning same, and admitting to recently buying and using drugs, a reasonable person would certainly perceive himself to be in police custody.[13] Additionally, the accusatory nature of Officer

at 41 (2); *State v. Curles*, 304 Ga. App. 235, 237 (696 SE2d 89) (2010).

[9] *Sosniak*, 287 Ga. at 280 (1) (A) (1) (punctuation omitted); *see also Curles*, 304 Ga. App. at 238 ("[T]he subjective views of the interrogator and suspect are not dispositive of whether a person is in custody for the purposes of *Miranda* warnings." (punctuation omitted)).

[10] At this point, a witness had already confirmed to her that Thompson was the individual who had been seen with the vacuum cleaners.

[11] The court *sua sponte* reconsidered its decision, but maintained its earlier ruling.

[12] *Compare State v. Billings,* 303 Ga. App. 419, 420 (693 SE2d 627) (2010) (holding that defendant was *not* in custody after officer discovered pills on his person and defendant admitted that he intended to sell the pills, because the contraband was not confiscated and defendant was not restrained while officer left for approximately 30 minutes to question witnesses).

[13] *See Jackson v. State*, 272 Ga. 191, 194 (3) (528 SE2d 232) (2000) ("A reasonable person in [the defendant's] position, having just confessed to involvement in a crime in the presence of law enforcement officers would, from that time forward, perceive himself to be in custody, and expect that his future freedom of action would be significantly curtailed."); *State v. Austin*, 310 Ga. App. 814, 821 (2) (714 SE2d 671) (2011) (holding that defendant was in custody after

Findley's question required the benefit of *Miranda* warnings, because although officers may make initial on-the-scene inquiries without *Miranda* warnings to ascertain the nature of the situation at hand, "[t]he questioning must *not* be aimed at obtaining information to establish a suspect's guilt."[14] Officer Findley's question, which came after a witness identified Thompson as the suspect, was clearly aimed at establishing his guilt.[15] Accordingly, Thompson's admission regarding the vacuum cleaners should have been suppressed.

Having determined that the trial court erred in admitting Thompson's statement, we must now determine whether "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction . . . ."[16] In this regard, the record reflects that the jury deliberated for some time and requested direction on the witness testimony and a lesser-included offense of criminal trespass;[17] there was testimony that the daycare center was located

---

officers discovered marijuana in his home, said he could not have it in his home, and asked defendant to show them any additional drugs so they could "go ahead and grab it now"); *see also State v. Thomas*, No. 1242, 2011 WL 6378830, at *15 (B) (Md. App. Dec. 21, 2011) (quoting *Jackson v. State* and suggesting that Georgia views a defendant's incriminating statement as a dispositive factor in determining whether an interrogation has become custodial). *Compare Moses v. State*, 264 Ga. 313, 314 (1) (444 SE2d 767) (1994) (holding that defendant was not in custody after officer discovered marijuana plant in his home because, after asking officer whether he was under arrest, officer responded that "the marijuana matter would be handled later").

[14] *State v. Lucas*, 265 Ga. App. 242, 244 (593 SE2d 707) (2004) (punctuation omitted); *see Barnes v. State*, 163 Ga. App. 61, 62 (2) (293 SE2d 717) (1982) ("Even though the person questioned is being detained, [when] the questions are directed towards establishing the nature of the situation at hand, rather than towards establishing the guilt of the person questioned, the inquiry is not a custodial interrogation, and is reasonable." (punctuation omitted)); *see also Taylor v. State*, 235 Ga. App. 323, 326 (2) (509 SE2d 388) (1998) ("[When] the defendant is not in custody . . . and responds to an officer's initial inquiry at an on-the-scene investigation that [has] not become accusatory, *Miranda* warnings are not required." (punctuation omitted)); *Dasher v. State*, 140 Ga. App. 517, 518 (1) (231 SE2d 510) (1976) (holding that *Miranda* "does not apply to an admission made at the outset of an on-the-scene investigation that had not yet become accusatory").

[15] *See Lucas*, 265 Ga. App. at 244 (deputy's question as to who owned marijuana located in home was aimed at establishing guilt); *State v. Wintker*, 223 Ga. App. 65, 68-69 (476 SE2d 835) (1996) (holding that officer's question as to whether suspect owned suitcase containing contraband was aimed at establishing guilt when officer had already eliminated another likely owner and suspect was in custody); *see also Bailey v. State*, 153 Ga. App. 178, 180 (264 SE2d 710) (1980) (questioning was appropriate without *Miranda* warnings when individual was not suspected of a crime, officer sought general information, question was nonaccusatory, and nothing suggested that situation was the result of individual's criminal actions). *Compare Munsford v. State*, 235 Ga. 38, 41 (218 SE2d 792) (1975) (officer's question was an initial threshold inquiry and not for the purpose of gathering evidence of guilt); *Casey v. State*, 246 Ga. App. 786, 789-90 (2) (542 SE2d 531) (2000) (same); *Dupont v. State*, 204 Ga. App. 262, 263 (2) (418 SE2d 803) (1992) (same).

[16] *Schneble v. Florida*, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340) (1972); *see also Sampson v. State*, 209 Ga. App. 213, 216 (3) (433 SE2d 136) (1993) (holding that even if admission of statement was error, error was "harmless beyond a reasonable doubt in light of the overwhelming evidence of [the defendant's] guilt").

[17] Additionally, the jury acquitted Thompson on a charge of simple assault based on

in a neighborhood subject to high crime and drug activity and that the owner had previously—and since—had trouble with burglaries; the witnesses gave inconsistent descriptions concerning the color of the vacuum cleaners and the suspect's clothing; and one eyewitness repeatedly referred to Thompson by another person's name. Accordingly, we conclude that there is a reasonable possibility that the improperly admitted evidence contributed to the jury's verdict.[18]

Nevertheless, while we are reversing Thompson's conviction, we note that the State may retry Thompson without violating Double Jeopardy because with or without his incriminating statement, there was otherwise sufficient evidence at trial to support the conviction.[19]

2. Given our holding in Division 1, we need not address Thompson's remaining arguments.

Accordingly, for all the forgoing reasons, we reverse Thompson's conviction.

*Judgment reversed. Mikell, P. J., and Boggs, J., concur.*

### DECIDED FEBRUARY 1, 2012.

*Roger C. Wilson*, for appellant.

*Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Assistant District Attorney*, for appellee.

---

events that allegedly transpired after he was transported to jail.

[18] *See Vaughn v. State*, 248 Ga. 127, 131-32 (2) (281 SE2d 594) (1981) (holding that improper admission of defendant's confession was not harmless and, accordingly, reversing); *Woodard v. State*, 256 Ga. App. 464, 465 (1) (568 SE2d 528) (2002) (same).

[19] *See Melton v. State*, 282 Ga. App. 685, 694 (2) (d) (639 SE2d 411) (2006) (permitting retrial when sufficient evidence existed, despite reversing conviction on other ground); *see also Wilcox v. State*, 310 Ga. App. 382, 385 (713 SE2d 468) (2011) (sufficient evidence to sustain burglary conviction when witnesses saw defendant in possession of items identified as having been stolen and defendant's own statement placed him at the scene of the burglary).