**FOURTH DIVISION
DOYLE, P. J.,
ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**October 18, 2012**

# In the Court of Appeals of Georgia

A12A1649. TEELE v. THE STATE.                                    DO-063 C

DOYLE, Presiding Judge.

Following a jury trial, Anjoure Charnel Teele was convicted of armed robbery. She appeals the denial of her motion for new trial, challenging the sufficiency of the evidence. Teele also argues that the trial court erred by admitting her statement to the police and by excluding testimony regarding her co-defendant's prior sworn statement. We reverse, for the reasons that follow.

Construed in favor of the verdict,[1] the record shows that on January 6, 2011, a man, later identified as Michael Anthony Williams, approached Edward Standley at a gas station and inquired about purchasing some jewelry. Standley did not have the items with him, so he showed Williams a photograph of them and gave him his

---

[1] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

phone number. That night, Williams called Standley, and they arranged to meet at an intersection in Standley's neighborhood so that Williams's girlfriend could examine the jewelry.

Standley met Williams and Teele at the arranged location; Teele was driving a red Dodge Neon, with Williams sitting in the passenger seat. Standley got into the back seat of the vehicle, retrieved a necklace from his backpack, and handed it to Williams. As Standley was returning the necklace to his bag, Williams pointed a gun at him and threatened to shoot him if Standley did not "leave everything." Standley exited the car, and Williams grabbed the backpack, exited the vehicle, pointed the gun at Standley again, and threatened him. Standley fled, hid behind a car, and watched Williams and Teele drive away. According to Standley, Teele sat in the driver's seat of the car during the entire exchange, looking forward and remaining silent.

Standley called 911 from his cell phone, and the dispatcher sent out the location of the robbery, a description of the assailants, including their racial descriptions, and a description of a red Dodge Neon. Officer J. E. Jaster spotted the vehicle and followed it to a parking lot in an apartment complex. After Officer Jaster activated his blue lights, the male passenger exited the car and ran. Jaster detained

2

Teele at gunpoint and repeatedly ordered her to exit the car and lie on the ground; she ultimately complied after refusing and protesting that she was pregnant.

Once backup arrived, Officer Jaster handcuffed Teele, stood her up, placed her in the back seat of his patrol car, and "advised her she was being detained in reference to an investigation." Jaster then asked Teele for her name and that of her passenger, and she refused to answer. Jaster then told Teele that "she need[ed] to think about this before she [went] down for it" and shut her in the patrol car. When Jaster returned to the vehicle, Teele told him that she had just "picked up" her passenger, and she gave the officer her name and date of birth. Thereafter, Jaster removed Teele's handcuffs and had her stand at the back of the patrol car while another officer drove Standley by in a patrol car; Standley identified Teele as the woman involved in the robbery.

Meanwhile, the police ran Teele's name and birth date in the computer and determined her address, which was an apartment in the same complex. Police knocked on the apartment door, and Williams answered. An officer asked Williams to step outside for questioning, and Williams complied, stating that, "It was me, not her." Williams was then handcuffed and arrested.

Teele was charged with armed robbery, and Williams was charged with armed robbery, possession of a firearm during the commission of a felony, and possession

3

of a firearm by a convicted felon. Williams entered a guilty plea and testified on Teele's behalf at trial. Williams stated that he took Teele, who was his live-in girlfriend, to meet Standley, intending to purchase the jewelry from him. According to Williams, Standley "got rude" when Williams asked for a bill of sale for the necklace, and Williams felt like Standley "was trying to play [him] on the jewelry." Williams then drew his weapon, pointed it at Standley's chest, grabbed the backpack, and Standley fled. Williams testified that Teele had nothing to do with the robbery and "it wasn't planned to go down like that."

1. Teele argues that the evidence was insufficient to enable a rational trier of fact to find her guilty beyond a reasonable doubt of armed robbery. We disagree.

(a) When reviewing the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal

4

conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[2]

Teele argues that other than driving the vehicle, she took no steps in furtherance of the robbery. She also contends that the robbery was not planned and that she did not know that Williams had a gun. These arguments do not require reversal.

OCGA § 16-2-21 provides: "Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto."[3]

> A participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime.[4]

---

[2] (Citations omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[3] The jury was charged on this Code section.

[4] (Citation omitted.) *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997).

While Teele may not have had a gun, she drove the car and remained there while Williams took Standley's backpack at gunpoint. Whether Teele was a party to the crime and aided and abetted Williams was a jury question, and the jury rejected Teele's argument and Willams's testimony that Teele had no knowledge of the robbery and was merely driving the car.[5] Under these circumstances, the evidence was sufficient to support the jury's verdict.[6]

(b) Teele also argues that the verdict was "strongly against the weight of the evidence," citing OCGA §§ 5-5-20[7] and 5-5-21.[8] "However, such an argument may

---

[5] See *Jordan v. State*, 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006).

[6] See *Bush v. State*, ___ Ga. App. ___, ___ (1) (731 SE2d 121) (2012); *Jordan*, 281 Ga. App. at 422-423 (1); *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

[7] OCGA § 5-5-20 provides: "In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury."

[8] OCGA § 5-5-21 provides: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

only be made to a trial court in a motion for new trial and not to this Court on appeal[,] and we have no discretion to grant a new trial based on such a claim."[9]

2. Teele contends that the trial court erred by denying her motion to suppress her in-custody statement to Officer Jaster (that she did not know Williams) because the officer had not advised her of her *Miranda*[10] rights. We agree.

"When an appellate court reviews a trial court's grant or denial of a motion to suppress, the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review."[11] "Voluntary statements made by unwarned suspects in custodial interrogation are presumed to be compulsory and are inadmissible at trial. . . . Therefore, to make a proper case for suppression, [Teele] must show both that [s]he was in custody and that [she] was subjected to interrogation."[12]

---

[9] *Overstreet v. State*, 304 Ga. App. 275, 276 (1) (696 SE2d 114) (2010), citing *Tucker v. State*, 299 Ga. App. 278, 278-279 (1) (683 SE2d 356) (2009).

[10] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[11] (Punctuation omitted.) *Petty v. State*, 283 Ga. 268, 269 (2) (658 SE2d 599) (2008), quoting *State v. Nash*, 279 Ga. 646, 648 (2) (619 SE2d 684) (2005).

[12] (Citations and punctuation omitted.) *Waters v. State*, 281 Ga. 119, 121 (4) (636 SE2d 538) (2006), citing *Oregon v. Elstad*, 470 U. S. 298, 307 (105 SC 1285, 84 LE2d 222) (1985).

7

First, we address whether Teele was in custody at the time she made her statement.[13] "In determining whether a suspect was in custody for *Miranda* purposes, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[14] "Whether a custodial situation exists does not depend upon the subjective views harbored by either the interrogating officers or the person being questioned."[15] Instead, "[t]he only relevant inquiry is how a reasonable [person] in the suspect's position would have understood [the] situation."[16] Here, Teele was approached at gunpoint, ordered to lie on the ground, despite protestations that she was pregnant, handcuffed, and placed in the

---

[13] With regard to the admissibility of Teele's statements, both the State and Teele confine their arguments on appeal to the issue of whether she was in custody at the time she made them. Our review of the transcript, however, shows that the trial court did not base its ruling on this issue, but instead concluded that Teele was not interrogated.

[14] (Punctuation omitted.) *State v. Wintker*, 223 Ga. App. 65, 66 (476 SE2d 835) (1996), quoting *Stansbury v. California*, 511 U. S. 318 (II) (114 SC 1526, 128 LE2d 293) (1994).

[15] (Punctuation omitted.) *Hightower v. State*, 272 Ga. 42, 43 (2) (526 SE2d 836) (2000), quoting *Stansbury*, 511 U. S. at 323 (II).

[16] *Hightower*, 272 Ga. at 43 (2), quoting *Berkemer v. McCarty*, 468 U. S. 420, 442 (III) (104 SC 3138, 82 LE2d 317) (1984).

8

back seat of a marked patrol car. Under these circumstances, "a reasonable person in [Teele's] position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."[17]

The issue of whether Teele was being subjected to interrogation, however, is a closer one.

> The Supreme Court has defined interrogation or its functional equivalent as express questioning by law enforcement officers or any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.[18]

The Court has explained that "[t]he latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police."[19] Thus, because "the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or

---

[17] *Wintker*, 223 Ga. App. at 67. See also *Waters*, 281 Ga. at 121 (4). Compare *Sewell v. State*, 283 Ga. 558, 562 (2) (662 SE2d 537) (2008).

[18] (Punctuation omitted.) *Cook v. State*, 270 Ga. 820, 825 (2) (514 SE2d 657) (1999), quoting *Arizona v. Mauro*, 481 U. S. 520, 526-527 (II) (107 SC 1931, 95 LE2d 458) (1987).

[19] *Rhode Island v. Innis*, 446 U. S. 291, 301 (II) (A) (100 SC 1682, 64 LE2d 297) (1980).

actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."[20] "[I]n deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards*[21]: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment."[22]

Here, the facts, which are not disputed, show that after pointing his weapon at Teele, ordering her on the ground, handcuffing her, and placing her in the back of his patrol car, Officer Jaster asked Teele for her name and that of her passenger. Pretermitting whether these questions alone constitute an interrogation,[23] Jaster did not stop there. Instead, when Teele refused to provide the information, Jaster, by his own account, told her that "she need[ed] to think about this before she [went] down

---

[20] (Emphasis in original.) Id. at 301-302.

[21] *Edwards v. Arizona*, 451 U.S. 477 (101 SC 1880, 68 LE2d 378) (1981).

[22] (Punctuation omitted.) *Cook*, 270 Ga. at 825-826 (2).

[23] See, e.g., *Nickerson v. State*, 248 Ga. App. 829, 833 (2) (c) (545 SE2d 587) (2001) ("A police officer's request for a suspect's name, which is a procedure required under OCGA § 17-4-27, does not constitute custodial interrogation.").

10

for it" and shut her in the patrol car.[24] Only after he so advised her, left her handcuffed and alone in the patrol car, and then returned to the car did Teele tell the officer that she had just picked Williams up, implying that she did not know him. Under these circumstances, we conclude that Officer Jaster interrogated Teele by using words and actions that he should have known were reasonably likely to elicit an incriminating response, and therefore, Teele's statements were inadmissible at trial.

"Having determined that the trial court erred in admitting [Teele's] statement, we must now determine whether there is a reasonable possibility that the improperly admitted evidence contributed to the conviction."[25] Although Teele's statements were not a direct confession, her representation to the police that she did not know Williams was contradicted by the evidence at trial that he was her boyfriend. The State argued to the jury that Teele's deceptive statement to the police established that she was a party to the robbery, thereby relying on it to obtain a guilty verdict. Furthermore, the record reflects that the jury deliberated for some time after the jury

---

[24] Teele was still handcuffed and was confined to the back seat of the patrol car.

[25] (Punctuation omitted.) *Thompson v. State*, 313 Ga. App. 844, 848 (1) (723 SE2d 85) (2012).

11

charges and then elected to return the following day to continue deliberations. The jury also requested direction on several issues, including explanations of reasonable doubt and party to a crime. "Accordingly, we conclude that there is a reasonable possibility that the improperly admitted evidence contributed to the jury's verdict."[26]

Although we are reversing Teele's conviction, we note that the State may retry her without violating her Double Jeopardy rights because as we concluded in Division 1, with or without Teele's incriminating statement, "there was otherwise sufficient evidence at trial to support the conviction."[27]

3. Given our holding in Division 2, we need not address Teele's remaining enumeration of error.

*Judgment reversed. Andrews and Boggs, JJ., concur.*

---

[26] See id. at 849 (1). See also *Vaughn v. State*, 248 Ga. 127, 131-132 (2) (281 SE2d 594) (1981). Compare *Dailey v. State*, 313 Ga. App. 809, 816-817 (1) (723 SE2d 43) (2012) (admission of the defendant's custodial statement was harmless because it was cumulative of other evidence and did not contribute to the verdict).

[27] *Thompson*, 313 Ga. App. at 849 (1).